# EXHIBIT 2

## MUTUAL SETTLEMENT AGREEMENT WITH FULL RELEASE AND COVENANT NOT TO SUE

This Mutual Settlement Agreement With Full Release And Covenant Not To Sue ("Agreement") is entered into, as of April ___, 2017 by and between Darren Kelly ("Kelly") an individual who resides at 1144 Green Circle, Boulder CO, 80305, Effyis, Inc., ("Effyis") a Michigan Corporation with its principal place of business located at 700 Tower Drive, Suite 140, Troy MI, 48098, and Hottolink, Inc., ("Hottolink") a Japanese corporation with its principal place of business located in Tokyo, Japan.

**WHEREAS,** Kelly, was originally a shareholder of Effyis and in December 2014 arranged for the sale of his ownership interest to Hottolink thru a series of transactions; and

**WHEREAS,** in conjunction with Kelly's sale to Hottolink, Kelly became both an Officer and Director of Effyis, and also a Director of Hottolink, because of an Employment Agreement entered into by all three (3) parties (the Kelly, Effyis and Hottolink) on December 18, 2014 (A copy of the Employment Agreement is attached as Exhibit "A"); and

**WHEREAS,** in conjunction with Kelly's sale to Hottolink, Kelly holds a Promissory Note ("Note") (A copy of the Note is attached as Exhibit "B") issued by Hottolink which calls for payments consistent with an Amortization Table as provided for in the Note and has a Maturity Date of the of either January 2019 or earlier as provided for in Section 10 of the Note; and

**WHEREAS,** Effyis and Hottolink terminated Kelly's employment with Effyis on February 24, 2017, which included his role as Officer of Effyis, and further terminated his roles as Director of Effyis on March 8, 2017 and Director of Hottolink on March 30, 2017; and

**WHEREAS**, a dispute has arisen as to whether the termination was with or without cause and whether either Kelly or Effyis breached the terms of the Employment Agreement; and

**WHEREAS,** Kelly, Effyis and Hottolink wish to forever resolve all disputes and controversies between and among each other;

**NOW THEREFORE KELLY, EFFYIS AND HOTTOLINK AGREE AS FOLLOWS:**

1. *Definitions of Parties and Claims.* For purposes of this Agreement the following definitions shall apply:
    a. Kelly shall include himself and his heirs, executors, administrators, successors, assigns and other personal representatives, including his attorney(s);
    b. Effyis shall include itself and its parent, and/or affiliate corporations, shareholders, directors, officers, partners, contractors, vendors, principals, agents, employees, predecessors, successors, administrators, trustees, receivers, assigns and/or representatives, which includes Effyis' attorneys; and
    c. Hottolink shall include itself and its subsidiaries, and/or affiliate corporations, shareholders, directors, officers, partners, contractors, vendors, principals, agents, employees, predecessors, successors, administrators, trustees, receivers, assigns and/or representatives, which includes Hottolink's attorney:
    d. Claim(s)" shall include, but is not limited to:
        i. any claims or causes of action of any type or kind, whether in law or equity, arising from the Note;
        ii. any claims or causes of action of any type or kind, whether in law or equity, arising from Kelly's employment with Effyis;
        iii. any claims or causes of action of any type or kind, whether in law or equity, arising from Kelly's roles as Director of Hottolink and Effyis and Officer of Effyis;

    iv. any claims or causes of action of any type or kind, whether in law or equity, arising from the separation of Kelly's employment with Effyis;

    v. any claims or causes of action of any type or kind, whether in law or equity, arising from any adverse treatment of Kelly by employees, supervisors, officers, directors and related entities of Effyis or Hottolink;

    vi. any claims or causes of action of any type or kind, whether in law or equity, for recall, reinstatement, back pay, front pay, future damages, pension benefits, lost benefits, attorneys' fees, costs, expenses and interest;

    vii. any other claims or causes of action premised upon the National Labor Relations Action ("NLRA"); Fair Labor Standards Act, 29 U.S.C. §207 *et seq*. ("FLSA"); Americans With Disabilities Act, 42 U.S.C.A. §12101 ("ADA"); Family Medical Leave Act, 29 U.S.C. §2601 *et seq*. ("FMLA"); the Age Discrimination in Employment Act, 29 U.S.C. §521 *et seq*. ("ADEA") and the Older Worker Benefit Protection Act ("OWBPA"); 42 U.S.C. §1983; Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq*. ("Title VII"); Employee Retirement Income Security Act of 1974, 29 U.S.C. §1001 *et seq*. ("ERISA"); 42 U.S.C. §1981; 42 U.S.C. §1983; 42 U.S.C. §1988; Michigan's discrimination statutes or laws; Michigan's workers compensation statutes; breach of contract, implied contract or quasi-contract; promissory estoppel; wrongful discharge; discharge in violation of public policy; defamation; infliction of emotional distress; invasion of

privacy; and/or any other applicable federal, state or local law, ordinance, regulation or order which may relate to employment and the continuing effects thereof.

2. ***Payments to Kelly.*** After the expiration of the seven (7) day rescission period set forth in Section 4 of this Agreement, Hottolink will issue two payments by bank wire transfer as follows:

   a. To the law firm of Howard & Howard the sum of Fifteen Thousand Dollars ($15,000.00) in satisfaction of the attorney fees Kelly has incurred in this matter; and

   b. To Kelly, the sum of Nine Hundred and Nine Thousand, Seven Hundred and Fifty Four Dollars ($909,754.00) plus interest from the date of April 1, 2017 thru the payment date based on the terms of the Note as full prepayment of the Note as permitted by Section 2.3 entitled Optional Prepayment.

   Upon payment of these funds, the Note shall be deemed canceled and void and marked paid in full.

3. ***Release and Covenant Not to Sue.***

   **PLEASE READ CAREFULLY. THIS SECTION INCLUDES A RELEASE OF ALL KNOWN AND UNKNOWN CLAIMS.**

   3.1 *Release.* Kelly irrevocably and unconditionally releases Effyis and Hottolink from any and all Claims made, to be made, or which might have been made at any time before, during or after Kelly's sale to Hottolink or before, during or after the termination of Kelly's employment relationship with Effyis. Kelly agrees not to file, claim, sue, or cause or permit to be filed or claimed any action for damages or for any other relief against Effyis or Hottolink involving any matter occurring in the past up to the effective date of this Agreement. Kelly further agrees to neither seek nor accept any further benefit or consideration from any source whatsoever with respect to any Claims made, to be made or which might have been made against Effyis or Hottolink. Similarly, Effyis and Hottolink irrevocably and unconditionally release Kelly from any and all Claims made, to

be made, or which might have been made at any time before, during or after Kelly's sale to Hottolink or before, during or after the termination of Kelly's employment relationship with Effyis. Effyis and Hottolink further agree not to file, claim, sue, or cause or permit to be filed or claimed any action for damages or for any other relief against Kelly involving any matter occurring in the past up to the effective date of this Agreement.

3.2   *Covenant Not to Sue.*  Kelly further covenants not to sue or to file Claims or charges against (or join in other actions, charges or investigations of class actions against) Effyis or Hottolink, whether past or present, based upon any act or event which occurred between Kelly or Effyis or Hottolink up until and including the date of this Agreement. Similarly, Effyis and Hottolink covenant not to sue or to file Claims against Kelly, whether past or present, based upon any act or event which occurred between Kelly and Effyis or Hottolink up until and including the date of this Agreement.

3.3   *Non-Admission.*  All parties agree that this Agreement is not an admission of guilt or liability on the part of Kelly, Effyis or Hottolink under any federal, state or local law, whether statutory or common law.

3.4   *Age Discrimination Rights.*  Employees of at least forty (40) years of age have certain federal rights, which the employee must explicitly waive. Specifically, the ADEA protects Kelly from discrimination in employment because of age. By executing this Agreement, Kelly waives these rights as to any past or current claims. Notwithstanding anything else in this Agreement, the parties intend to exclude from this Section 3, ADEA claims that may arise after execution of this Agreement.

4. ***Knowledge of Rights.*** Kelly has consulted with an attorney and acknowledges that he is aware that he has rights under federal and state statutory and common law, including those relating to employment termination and/or employment discrimination, and understands that the consideration being paid to him in this Agreement is expressly conditional on his waiving all claims relating, directly or indirectly, to his employment with and separation from Effyis, including, but not limited to, any and all claims under Title VII of the Civil Rights Act of 1964, as amended, the Age Discrimination in Employment Act, the Older Workers Benefit Protection Act, the Civil Rights Act of 1866, the Americans with Disabilities Act, the Employee Retirement Income Security Act, the Worker Adjustment and Retraining

Notification Act, any and all claims for attorney's fees, any and all contract, tort, or common law claims, and any and all other claims under any federal or state statute or ordinance or under any federal or state common law. Notwithstanding anything else in this Agreement, age claims under the Age Discrimination in Employment Act or the Older Workers' Benefit Protection Act that may arise after execution of this Agreement are excluded from it. Under the Age Discrimination in Employment Act or the Older Workers' Benefit Protection Act, Kelly has the right to and has in fact consulted with an attorney before executing this Agreement. Kelly also has twenty-one (21) days within which to consider this Agreement, which period commences on the date such Agreement is presented to him. ***If Kelly elects to execute this Agreement prior to expiration of twenty-one days from receipt of this Agreement, he warrants that he has done so knowingly, understandably and voluntarily.*** This Agreement will become effective only after the expiration of seven (7) calendar days following its execution by Kelly, and may be revoked by him at any time during that seven-day (7) period by delivering a signed revocation notice to

Louis J. Licata
Licata Law Group
4500 Rockside Road Suite 420
Independence, OH 44131
LJL@LICATALAW.COM

5. ***Confidentiality***. The parties agrees that this Agreement is considered a confidential and proprietary document and therefore further agrees, except as required by law, not to disclose its terms or the fact of its execution to any other person or entity without the advance written consent of the other parties. This non-disclosure provision does not apply to the parties' immediate family, attorney(s) or tax advisor(s), as long as the excepted individuals are notified of this provision and agree to not further disclose in

accordance with the terms of this provision. The parties agree that disclosure by any of the excepted individuals is the same, for purposes of this Agreement, as if the party had made the disclosure. Kelly further agrees that, in the event he is served with a valid, lawful order of a court having competent jurisdiction over the subject matter, he will notify Effyis and Hottolink of service so as to provide an opportunity to enforce these confidentiality provisions. In this regard, notice must be given as follows:

Louis J. Licata
Licata Law Group
4500 Rockside Road Suite 420
Independence, OH 44131
LJL@LICATALAW.COM

Kelly also agrees that should he commit a violation of this confidentiality provision, Effyis and Hottolink may seek any legal or equitable relief to which it may be entitled, including attorney's fees, for each violation of this agreement in a court of law.

6. ***Surviving Provisions of the Employment Agreement.*** The parties acknowledge that Section 27 of the Employment Agreement provides that certain provisions of the Employment Agreement were intended to survive the termination of the Employment Agreement. The parties agree that Section 27 is specifically incorporated herein as an essential term of this Agreement and consistent with Section 27, Sections 6, 7, 8, 10, 11 and 12 with all the subsections and subparts are also expressly incorporated herein as essential terms of this Agreement.

7. ***Kelly Cooperation.*** Kelly agrees to cooperate with Effyis and Hottolink regarding any pending or subsequently filed litigation, claims or other disputed items involving Effyis or Hottolink that relate to matters within the knowledge or responsibility of

Kelly during his employment with Effyis or his roles as Officer and Director of Effyis and Director of Hottolink. Without limiting the foregoing, Kelly agrees:

a. to meet with representatives of Effyis or Hottolink, its counsel or other designees at mutually convenient times and places with respect to any items within the scope of this provision;

b. to provide truthful testimony regarding same to any court, agency or other adjudicatory body; and

c. to provide Effyis or Hottolink with notice of contact by any adverse party, and further agrees not to assist any adverse party or adverse party's representatives except as required by law.

Effyis and Hottolink will reimburse Kelly for all reasonable expenses, including any lost wages at Kelly's then current rate for time spent in connection with the cooperation described in this Section.

8. **Compliance with Agreement and Severability.** Further, and without in any way affecting the generality of the foregoing, the parties agree that no failure by anyone to insist upon compliance with any term of this Agreement, to exercise any option, enforce any right, or seek any remedy, upon any default of any other party will affect, or constitute a waiver of, the other's right to insist upon strict compliance, exercise that option, enforce that right, or seek that remedy with respect to the default or any prior, contemporaneous, or subsequent default; nor will any custom or practice or variance with any provision of this Agreement affect, or constitute a waiver of, any one's right to demand strict compliance with all provisions of this Agreement. If any provision, section, subsection or other portion of this Agreement is determined by any court of competent jurisdiction to be invalid, illegal or unenforceable in whole or in part, and that determination becomes final, the provision or portion will be deemed to be severed or limited, but only to the extent required to render the remaining

provisions and portion of this Agreement enforceable. This Agreement, as thus amended, will be enforced so as to give effect to the intention of the parties insofar as that is possible. In addition, the parties expressly empower a court of competent jurisdiction to modify any term or provision of this Agreement to the extent necessary to comply with existing law and to enforce this Agreement as modified.

9. *Breach and Specific Enforcement*. Further, and without in any way affecting the generality of the foregoing, The parties agrees that this Agreement constitutes a separate, binding and substituted contract, as opposed to an accord and satisfaction, and further agrees that the sole and exclusive remedy as to any claims against each other will be the performance of this Agreement. The parties agree and acknowledge that this Agreement may be used as evidence in any subsequent proceeding in which any party alleges a breach of this Agreement or asserts claims inconsistent with its terms. This Agreement may be specifically enforced by judicial proceedings. In the event of any further legal action between the parties for enforcement of any of the terms or covenants of this Agreement, the prevailing party will be entitled to recover, in addition to that party's damages or other relief as awarded by a court of competent jurisdiction, that party's reasonable costs and attorney's fees.

10. *Knowing and Voluntary Execution*. Further, and without in any way affecting the generality of the foregoing, Kelly agrees that (a) he has fully investigated and researched the facts and issues giving rise to this Agreement; (b) he has been fully informed of the terms, covenants and effects of this Agreement; (c) he has been advised and has had a full and adequate opportunity to consult with counsel concerning the effects of this Agreement, and, in fact, (d) he has consulted with an attorney from the law firm of Howard & Howard; (e) no promises or inducements

have been offered to him by anyone except as set forth in this Agreement; (f) this Agreement is executed without any reliance upon any statements or representations other than those set forth in this Agreement; (g) he executes this Agreement of his own free act and deed; and (h) he is duly authorized and competent to execute this Agreement.

To facilitate the knowing and voluntary execution of this Agreement by Kelly, Effyis and Hottolink do not require him to execute it immediately. Rather, he need only execute and deliver the Agreement to Effyis and Hottolink no later than the twenty-one (21) day review period provided in Section 4 of this Agreement. Kelly may deliver the document to Scott Purdon at the Effyis offices with a copy to Louis J. Licata at his law office provided earlier in this Agreement.

11. *Surrender of Note.* Upon the execution of this Agreement, Kelly shall concurrently surrender the Note to either his attorney at the law firm of Howard & Howard, or to a representative for Effyis and Hottolink. If surrendered to Howard & Howard, then Howard & Howard shall immediately tender the note to Louis J Licata upon confirmation of payment under Section 2.

12. *Governing Law.* Further, and without in any way affecting the generality of the foregoing, the parties agrees that this Agreement will be governed by the laws of the State of Michigan.

13. *Entire Agreement.* Further, and without in any way affecting the generality of the foregoing, the parties agree and acknowledge that this Agreement with its Exhibits is the entire agreement between them, and that no other representation, promise, covenant or agreement of any kind whatsoever has been made to cause any party to execute this Agreement. Kelly acknowledges that he has not relied on any

representation or promise issued by Effyis or Hottolink before executing this Agreement. The parties further agree and acknowledge that this Agreement is contractual, and not a mere recital. They also agree that the terms of this Agreement may not be amended or changed except in writing and signed by all parties. They further agree that this Agreement is binding on and inures to the benefit of Kelly, Effyis and Hottolink, as defined and described in this Agreement.

**IN WITNESS WHEREOF**, Kelly, Effyis and Hottolink have caused this Agreement to be executed on the date and place set forth below.

<u>**CAUTION!!**</u>

<u>**READ BEFORE SIGNING AS THIS IS A SEPARATION AGREEMENT AND COVENANT NOT TO SUE**</u>

Date: _____

_____
**DARREN KELLY**

Date: _____

**EFFYIS, INC.**

By: _____
Scott Purdon Chief Executive Officer and President

Date: _____

**HOTTOLINK, INC.**

By: _____
Koki Uchiyama Chief Executive Officer