**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

EFFYIS, INC. and HOTTOLINK, INC.,

    Plaintiffs,

v.                                                Case No. 18-13391

DARREN KELLY,

    Defendant.
_____/

**OPINION AND ORDER GRANTING PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT AND DENYING AS MOOT PLAINTIFFS'
MOTION TO FILE AMENDED DEFENSES**

**I. INTRODUCTION**

Plaintiffs Effyis, Inc. and Hottolink, Inc. sue their former employee, Defendant Darren Kelly. Plaintiffs seek declaratory judgment as to the existence of a valid settlement agreement between the parties for Kelly to waive any claims he could bring against Plaintiffs related to his termination. In the alternative, Plaintiffs also bring claim for declaratory judgment on the issue of cause for Kelly's termination and for breach of fiduciary duty. Kelly contends that the parties never reached an agreement and brings a counterclaim for breach of his employment contract based on his termination. Pending before the court is Plaintiffs' motion to file an amended answer to Kelly's counterclaim in order to add additional affirmative defenses. Also pending before the court is Plaintiffs' motion for summary judgment on its declaratory judgment claim to enforce the settlement agreement (Count I) and Kelly's breach of contract counterclaim. Both motions have been fully briefed, and the court concludes that a hearing is not

necessary. *See* E.D. Mich. 7.1(f)(2). For the reasons stated below, the court will grant Plaintiffs' motion for summary judgment and will deny as moot Plaintiffs' motion to file amended affirmative defenses.

## II. BACKGROUND

### A. Factual History

Plaintiff Effyis was co-founded by Scott Purdon, who is not a party to this suit. In 2012, Defendant Darren Kelly became an owner of Effyis. Both Purdon and Kelly arranged to sell their ownership interest in Effyis to Plaintiff Hottolink in early 2015 as part of an acquisition deal. As part of this sale, Kelly entered into an employment contract to become the President of Effyis. In 2017, Plaintiffs terminated Kelly's employment. The parties dispute the basis for Kelly's termination.

The parties, joined by Purdon, attempted to negotiate a settlement for claims arising from Kelly's termination. According to Plaintiffs, Kelly and Purdon directly negotiated the terms of a settlement during a phone conversation on April 12, 2017. (ECF No. 30, PageID.386.) Kelly admits that he spoke with Purdon about a settlement on that day but denies that they agreed to any terms of settlement. (ECF No. 30-5, PageID.497–98; ECF No. 35, PageID.562.) Following the call, Purdon sent Kelly an email which Plaintiffs contend memorialized the terms of the settlement to which Kelly agreed over the phone. Plaintiffs assert that the terms of the settlement include that: (1) Hottolink would fully repay Kelly for a loan he made during Effyis's acquisition by Hottolink, (2) Kelly would receive $15,000 for his incurred legal fees related to the settlement negotiations, and (3) Kelly and Effyis/Hottolink would sign waivers and

releases of "any and all claims" the parties had against each other. (ECF No. 30, PageID.386–87.) The April 12, 2017 email from Purdon to Kelly reads as follows:

> DK,
>
> Thank you for all your participation and support during this very difficult situation! Please respond to this email with your confirmation (YES I CONFIRM). Once I have your confirmation, we can get the attorneys to finalize the necessary legal paperwork so that HL can process your payments.
>
> 1) Full Loan Repayment
> 2) $15,000 USD Payment
> 3) Signed waivers (US and Japan)
>
> Best,
> Scott

(ECF No. 30-2, PageID.418.) In response to the email, Kelly sent:

> Yes, I confirm.
>
> I am doing this because I have the best interest of all stakeholders in mind.
>
> I continue to vigorously deny the allegations made against me and they must be retracted in the waiver documents.
>
> If this settlement is not completed in a timely basis, I will immediately take action in the courts to defend my rights.
>
> My Michigan and Japanese attorneys are copied.
>
> Thank you, Scott, for your great assistance in this matter.
>
> -DK

(*Id.* at PageID.421.) Purdon responded to this email, "Thank you DK! I'll pass along your confirmation so we can move forward immediately." (*Id.*) Later that day, Kelly sent the following email—presented in part—to his attorneys:

> Under my Michigan employment agreement with Effyis (and guaranteed by Hottolink), my Michigan attorney felt strongly that Effyis owed me

3

> $566,000 in additional wages to cover the two remaining years in the contract.
>
> However, I have decided to waive this payment in exchange for immediate payment by Hottolink to me of ~$900,000 in outstanding debt that Hottolink owes me.
>
> In addition, I require Hottolink to waive their rights to sue me in the USA or Japan for any reason resulting from my associations with Effyis and Hottolink.

(ECF No. 36-2, PageID.690.)

Attorneys for Plaintiffs then prepared a "Mutual Settlement Agreement" and emailed the document to Kelly and his attorneys on April 19, 2017. (ECF No. 30-2, PageID.426–36; ECF No. 30, PageID.388.) Kelly never signed the agreement. However, Plaintiffs' only seek to enforce the terms of the April 12, 2017 email exchange between the parties, not the Mutual Settlement Agreement. (ECF No. 30, PageID.392; ECF No. 36, PageID.682–83.)

## B. Procedural History

Kelly filed an answer to the complaint and asserted one counterclaim for breach of his employment contract in which he alleges that Plaintiffs terminated him without cause. Plaintiffs move for summary judgment on Count I on their complaint (declaratory judgment as to the settlement agreement) and the breach of contract counterclaim. Plaintiffs' also filed a motion to amend their answer to the counterclaim to include the affirmative defense of failure to mitigate and to raise the defense of the after-acquired evidence doctrine.

## III. STANDARD

Summary judgment is appropriate when there exists no dispute of material fact and the moving party demonstrates entitlement to judgment as a matter of law. Fed. R.

Civ. P. 56(a). In evaluating a motion for summary judgment, the court considers all evidence, and all reasonable inferences flowing therefrom, in the light most favorable to the nonmoving party. *Moran v. Al Basit LLC*, 788 F.3d 201, 204 (6th Cir. 2015). The court may not make credibility determinations or weigh the evidence presented in support or opposition to a motion for summary judgment, only the finder of fact can make such determinations. *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014).

The movant has the initial burden of showing—pointing out—the absence of a genuine dispute as to any material fact; i.e., "an absence of evidence to support the nonmoving party's case." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 325 (1986). The burden then shifts to the nonmoving party to set forth enough admissible evidence to raise a genuine issue of material fact for trial. *Laster*, 746 F.3d at 726 (citing *Celotex Corp.*, 477 U.S. at 324). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248; *Williams v. AT&T Mobility Servs. LLC*, 847 F.3d 384, 391 (6th Cir. 2017). Not all factual disputes are material. A fact is "material" for purposes of summary judgment when proof of that fact would establish or refute an essential element of the claim "and would affect the application of the governing law to the rights of the parties." *Rachells v. Cingular Wireless Employee Servs., LLC*, 732 F.3d 652, 660 (6th Cir. 2013).

## IV. DISCUSSION

The court begins by addressing Plaintiffs' motion for summary judgment on Count I of their complaint (settlement agreement declaratory judgment) because the resolution of this claim has the potential to moot the remainder of the pending motions.

Plaintiffs contend that the parties' communications on April 12, 2017 form a valid settlement agreement to waive all of the parties' respective claims stemming from Kelly's termination in exchange for payments to Kelly. According to Kelly, the parties lacked mutual assent to reach a settlement and the terms of the email communications are too vague to enforce. Kelly also extensively argues that the parties lacked mutual assent to enter into the unsigned Mutual Settlement Agreement—which Purdon forwarded to Kelly and his attorneys on April 19, 2017—because the Mutual Settlement Agreement contains different and additional terms not contemplated by the parties in their earlier discussions. Kelly's arguments related to the enforceability of the Mutual Settlement Agreement are not relevant because Plaintiffs only seek to enforce the terms expressed in the April 12, 2017 email communications.

"The existence and interpretation of a contract are questions of law reviewed de novo." *Kloian v. Domino's Pizza, L.L.C.*, 733 N.W.2d 766, 770 (Mich. Ct. App. 2006). "An agreement to compromise or settle a claim is a contract, governed by the legal principles applicable to contracts generally." *Mastaw v. Naiukow*, 306 N.W.2d 378, 380 (Mich. Ct. App. 1981). Under Michigan law, contract formation requires a meeting of the minds (i.e. mutual assent) as to all material terms of the agreement. *Kamalnath v. Mercy Memorial Hosp. Corp.*, 487 N.W.2d 499, 503 (Mich. Ct. App. 1992). "A meeting of the minds is judged by an objective standard, looking to the express words of the parties and their visible acts, not their subjective states of mind." *Id.* In making the determination of whether a meeting of the minds occurred, "[t]he court considers the relevant circumstances surrounding the transaction, including all writings, oral statements, and other conduct by which the parties manifested their intent." *Barber v.*

*SMH (US), Inc.*, 509 N.W.2d 791, 794 (Mich. Ct. App. 1994). "If the language of the contract is unambiguous, we construe and enforce the contract as written." *Quality Prods. & Concepts Co. v. Nagel Precision, Inc.*, 666 N.W.2d 251, 259 (Mich. 2003).

Kelly contends that there was no meeting of the minds to reach a settlement and that the terms of the parties' email communications are too vague to enforce. Specifically, Kelly argues that the communications offer "no explanation of what the parties intended to 'settle,'" and that the communications fail to specify a method or schedule for payments. (ECF No. 35, PageID.569–70.) Kelly does not dispute the amount of the loan owed to him. (*Id.*)

Kelly's unequivocal acceptance of to the terms of the April 12, 2017 email ("Yes I confirm" (ECF No. 30-2, PageID.418)) demonstrates his assent to the terms of a settlement as expressed in the email. *Kamalnath*, 487 N.W.2d at 503. Kelly's objective manifestation of agreement is dispositive of the issue of mutual assent, not his "subjective state of mind" that no agreement was reached.[1] *Id.* The fact that Kelly never signed a physical document memorializing the terms is of no consequence. *See State Bank of Standish v. Curry*, 500 N.W.2d 104, 111 (Mich. 1993) (affirming the jury award finding that the parties entered into an oral contract). Kelly's acceptance to the email, coupled with his warning that "*[i]f this settlement* is not completed in a timely basis, I will immediately take action in the courts to defend my rights" (ECF No. 30-2, PageID.421

---

[1] Kelly testified at deposition that his response to Purdon's email of "I confirm" meant that "I'd like you to send me the actual legal agreement for my review that we could work towards on a signature. . . . It was never my intention to agree to only these things here." (ECF No 30-5, PageID.500.)

7

(emphasis added)) demonstrates both that he understood that he was agreeing to a settlement and he comprehended the settlement's terms.

The record is replete with additional evidence that Kelly assented to the terms of the settlement. Kelly admitted in his response to Plaintiffs' motion for summary judgment that the parties were engaged in a dispute "regarding the grounds for the termination of Mr. Kelly's employment" and that the parties "engaged extensive settlement negotiations to try to resolve the dispute." (ECF No. 30, PageID.386; ECF No. 35, PageID. 562.) Based on these admissions, Kelly cannot simultaneously argue that he failed to comprehend the purpose of the settlement or that he rejected the terms. Moreover, during his deposition, Kelly admitted that the terms of the April 12th email pertained to the settlement of "any dispute that could exist" between the parties. (ECF No. 30-5, PageID.497–98.) Purdon's affidavit demonstrates a similar understanding of the purpose for the settlement discussions. (ECF No. 30-2, PageID.414). Thus, the "circumstances surrounding the transaction" show the intent of the parties to enter into a settlement for all claims stemming from Kelly's termination. *Barber*, 509 N.W.2d at 794.

Kelly's argument that the communications failed to specify the terms of a repayment schedule does not abrogate his assent to settlement because such terms are not material. Michigan courts have long held that the "failure to address the time of performance is not fatal to enforcement of the agreement because it is not an essential term." *GIBBS v. GIBBS*, No. 266718, 2007 WL 838952, at *4 (Ct. App. Mar. 20, 2007) (affirming enforcement of a settlement agreement) (citing *Brady v. Cent. Excavators, Inc.*, 25 N.W.2d 630, 635 (Mich. 1947) ("[W]hen a written contract is silent as to time of performance, a reasonable time is to be presumed without reference to parol

evidence.")); *see also Nichols v. Seaks*, 295 N.W. 596, 598 (Mich. 1941) ("So long as the essentials are defined by the parties themselves, the law supplies the missing details by construction."). The court finds that the emails contain the "essentials" of the parties' settlement.

Kelly's unambiguous acceptance of the terms expressed in the parties' email communications demonstrate his assent to settlement. Additionally, Kelly's testimony and admissions in response to this motion indicate that he understood the terms of the settlement when he responded to Purdon's email. Kelly puts forth no evidence that he attempted to withdraw his acceptance or clarify the terms of the agreement. Michigan law requires no additional formalities to form a binding settlement contract. *See Kamalnath*, 487 N.W.2d at 503. Accordingly, the court will grant Plaintiffs' motion for summary judgment on Count I of their complaint. This ruling also entitles Plaintiffs to summary judgment on the breach of contract counterclaim because the existence of an enforceable settlement agreement forecloses Kelly's ability to litigate the issue of Plaintiffs' grounds for his termination.

## V. CONCLUSION

For the reasons explained above, the court finds that the parties entered into an enforceable settlement agreement through email which extinguished Kelly's right to litigate the issue of his termination. Based on this finding, Plaintiffs' are entitled to declaratory judgment on Count I of their complaint and Kelly's breach of contract counterclaim. Plaintiffs' motion to file an amended answer to the counterclaim will be moot upon the entry of a favorable disposition of the summary judgment motion. Counts II and III of Plaintiffs' complaint are pleaded in the alternative. Thus, the court's

determination that Plaintiffs are entitled to summary judgment on Count I also moots the remaining claims at issue in this dispute. Accordingly,

IT IS ORDERED that Plaintiffs' Motion for Summary Judgment (ECF No. 30) is GRANTED. Judgment will be entered in favor of Plaintiffs.

IT IS FURTHER ORDERED that Plaintiffs' Motion to File an Amended Answer (ECF No. 29) is DENIED AS MOOT.

s/Robert H. Cleland<br>
ROBERT H. CLELAND<br>
UNITED STATES DISTRICT JUDGE

Dated: October 31, 2019

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, October 31, 2019, by electronic and/or ordinary mail.

s/Lisa Wagner<br>
Case Manager and Deputy Clerk<br>
(810) 292-6522

C:\Users\hannaborsilli\Documents\18-13391.EFFYIS.msj.hek.docx